UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WML GRYPHON FUND, LLC, et al.,

        Plaintiffs,

  v.                                   Case No. 13-C-156

WOOD, HAT & SILVER, LLC, et al.,

        Defendants.

**DECISION AND ORDER REMANDING CASE**

This is an action filed by a court-appointed receiver on behalf of Plaintiffs, which are investment vehicles (including various partnerships and an LLC), that had invested in what is known as non-recourse premium financing for life insurance policies. Plaintiffs filed the action in state court against 23 Defendants, some of whom reside in the State of Wisconsin. The Defendants removed the action to federal court. Plaintiffs now move to remand the action on the ground that the absence of complete diversity of citizenship precludes subject matter jurisdiction. For the reasons given below, the motion to remand will be granted.

The removal statute provides as follows: "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The Defendants concede that among their number are residents of Wisconsin. They make two arguments in favor of jurisdiction. First, they suggest that because this case was

filed by a federally-appointed receiver, it may proceed in federal court notwithstanding any other jurisdictional principles. Second, they invoke the "fraudulent misjoinder" doctrine, under which the residency of the in-state Defendants may be disregarded.

**I. There is no Jurisdiction Merely Because a Receiver Could Have Filed in Federal Court**

The Defendants first argue that this Court has original jurisdiction because this is an action brought by a receiver. It is not disputed that a receiver appointed in a federal case may bring an action such as this in federal court, and it is sometimes said that "removal is proper over any action that could have been filed originally in federal court." *Tylka v. Gerber Products Co.,* 211 F.3d 445, 448 (7th Cir. 2000). Thus, because this action could have been brought in federal court, the Defendants believe it is *ipso facto* removable.

Although federal courts sometimes use shorthand like that in *Tylka* to explain removal jurisdiction, the removal statute does *not* state that any action may be removed if it "could have been filed originally in federal court." *Id.* Instead, § 1441(a) states that removal is allowed as to "any civil action brought in a State court of which the district courts of the United States have *original jurisdiction* ..." 28 U.S.C. § 1441(a) (emphasis added). Civil actions of which district courts have original jurisdiction are a smaller subset of all actions that may be filed in federal court because some actions, such as those in ancillary proceedings, do not require original jurisdiction. In other words, the group of actions over which a federal court has original jurisdiction is slightly smaller than the group that may be filed in federal court. The two categories are thus not coextensive.

More than one hundred years ago the Supreme Court recognized that a proceeding brought by a receiver "to accomplish the ends sought and directed by the suit in which the appointment was made . . . is regarded as ancillary" to the court's original subject matter jurisdiction. *Pope v.*

2

*Louisville, N.A. & C. Ry.*, 173 U.S. 573, 577 (1899). The Seventh Circuit has recognized this as well. In *Tcherepnin v. Franz,* the court found that the district judge properly relied upon ancillary jurisdiction in deciding a civil action brought by a court-appointed receiver. 485 F.2d 1251, 1255-56 (7th Cir. 1973). The court went on to note that "the district court could properly rely upon its ancillary jurisdiction and need not have an independent jurisdictional base." *Id.* at 1256.

This "independent jurisdictional base" is key to the dispute here. The removal statute requires an independent jurisdictional base—original jurisdiction—and does not encompass cases that may only be brought under a court's ancillary jurisdiction. Thus, the fact that this action *may* have been brought in federal court is not enough to warrant removal of the case to federal court because removal requires *original* jurisdiction. Original jurisdiction comes by way of the statutes Congress enacted to empower courts to hear certain kinds of cases:

> The district courts of the United States, as we have said many times, are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute," In order to provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction in federal-question cases—civil actions that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. In order to provide a neutral forum for what have come to be known as diversity cases, Congress also has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. § 1332.

*Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 552 (2005) (citation omitted).

Thus, the principal sources of a district court's original jurisdiction are §§ 1331 (federal question) and 1332 (diversity). (Other sources exist, such as § 1340, which provides original jurisdiction for internal revenue matters.) The ancillary jurisdiction that might exist in this case (had Plaintiffs elected to file the action here) is not a substitute for the original jurisdiction requirement.

3

As the Supreme Court recently observed, "[a]ncillary jurisdiction . . . cannot provide the original jurisdiction that petitioners must show in order to qualify for removal under § 1441." *Syngenta Crop Protection, Inc. v. Henson,* 537 U.S. 28, 34 (2002); *City of Warren v. City of Detroit,* 495 F.3d 282, 286 n.2 (6th Cir. 2007) ("Ancillary jurisdiction is insufficient to support removal."); *Myers v. Richland County,* 429 F.3d 740, 748 (8th Cir. 2005) ("Ancillary enforcement jurisdiction, like supplemental jurisdiction under § 1367, is not original jurisdiction . . . ancillary jurisdiction does not provide the original jurisdiction needed for removal to federal court under 28 U.S.C. § 1441.").

Defendants protest that none of the above-cited cases involved the scenario in which the action *could* have been filed in federal court, for instance, by a federally-appointed receiver. Although that might be true, the meaning of "original jurisdiction" in § 1441 does not change based on who the parties are in a given case. Simply put, there is no getting around the fact that § 1441 requires original jurisdiction and we do not have original jurisdiction in this case. It should be emphasized that this is not a mere technicality. The fact that a receiver *may* bring a lawsuit otherwise lacking in subject matter jurisdiction in federal court is, in effect, a grant of largesse due to the recognition that in some cases judicial economies may be achieved when facts and other questions intermingle. *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 379-80 (1994). The salient point is that ancillary jurisdiction is *permissive.* Here, the Defendants are seeking to force this case into federal court when the Plaintiffs themselves are not asking to take advantage of that permissive doctrine. That approach would impermissibly substitute ancillary jurisdiction for original jurisdiction and would ignore the fact that the removal statute must be construed strictly.

4

## II. There is no Diversity Jurisdiction

In the alternative, Defendants argue that original jurisdiction does exist because all of the properly joined Defendants are completely diverse. Although they concede that Defendants Riek and Riek & Associates, LLC are Wisconsin-based defendants, Defendants argue that they should be disregarded for removal purposes because they were not properly joined under state or federal law.

For support the Defendants rely on the "fraudulent misjoinder" doctrine, under which a court may sever any procedurally misjoined plaintiff where the misjoinder in question is "so egregious as to constitute fraudulent misjoinder." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (overruled on other grounds). In other words, if a court suspects that a defendant was joined merely as a ruse to defeat a possible removal, a court looks at the joined defendants to determine whether there is an "outright absence of reasonable basis in fact or colorable ground" for the joinder. *In re Avandia Marketing, Sales Practices and Products Liability Litigation,* 624 F.Supp.2d 396, 413 (E.D. Pa. 2009).

The fraudulent joinder doctrine is much more familiar. Under that doctrine, a court looks to the merits of a claim against a non-diverse defendant. If the merits are so obviously lacking that the joinder of that defendant may be deemed "fraudulent" (a misnomer in many respects), then the court will disregard that defendant for diversity purposes. The fraudulent *mis*joinder doctrine is different and has not been applied consistently. Under this theory, the merits of the claim against the in-state defendant may be sound, but it is the procedural act of joining the claim with the other claims that is claimed to be objectionable. In a fraudulent misjoinder situation, a court looks to see whether there is a reasonable basis for the joinder, not a reasonable basis for the claim.

5

Plaintiffs argue that this doctrine is viewed skeptically by many courts and that the Eleventh and Fifth Circuits are the only circuits in which it has been applied with any consistency. In *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation,* Judge Herndon discussed the doctrine at length. 779 F.Supp.2d 846, 853-57 (S.D. Ill. 2011). Although he noted the sometimes serious problems the doctrine was designed to curtail, he ultimately concluded (agreeing with Judge Murphy) that it was an improper expansion of federal judicial power and that bright-line rules were preferable to the kind of nuanced joinder inquiry the doctrine would require. 779 F.Supp.2d at 853-57. For the reasons given in *In re Yaz,* I conclude that the fraudulent joinder doctrine is not a viable one. In cases of obvious procedural gamesmanship, it is tempting to conclude that there must be a judicial solution to cure an abuse that deprives a defendant of its right to a federal forum. But the fact that a problem exists does not necessarily mean that the remedy for that problem lies with the federal courts. The fraudulent joinder doctrine would require courts to work overtime in order to find removal jurisdiction, when in fact the prevailing interpretive winds, particularly in this Circuit, require that the removal statute and jurisdiction more generally be viewed narrowly.

Even if the fraudulent misjoinder doctrine did have merit, it seems clear that it would only apply in cases where the joinder is *egregious,* that is, where the joinder of an in-state defendant would jump off the page to any first-year law student as being an obvious procedural ruse that, if tolerated, would reward trickery at the expense of substance. That level of egregiousness is not present here. According to the complaint, Riek (a Wood, Hat & Silver employee) and Riek and Associates (a company Riek created) were intimately involved with the funds at issue here and worked as a "finder," participating in Wealth Management meetings and the selection of the funds

6

for investment. (Compl., ECF No. 1, Ex. 1 at ¶¶ 295-311.) The complaint details payments Riek received totaling into the millions of dollars, which Plaintiffs allege was the result of breaches of fiduciary duty caused by Riek. These are not the sorts of claims that are clearly distinct and unjoinable; in fact, they appear to be of a piece with the other allegations in the complaint, which involve a vast web of entities and individuals allegedly acting improperly. Accordingly, even if the fraudulent misjoinder doctrine were viable, it would not be applicable here.

**III. Conclusion**

For the reasons given above, the motion to remand is **GRANTED**. The case is remanded to Outagamie County Circuit Court for further proceedings.

**SO ORDERED** this 31st day of May, 2013.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court